UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SAMUEL BUOSCIO,

    Plaintiff,

vs.                              Civil Action 2:13-CV-973
                                  Judge Gregory L. Frost
                                  Magistrate Judge Elizabeth Preston Deavers

GARY MOHR, *et al.*,

    Defendants.

**ORDER AND REPORT AND RECOMMENDATION**

Plaintiff, Samual Buoscio, a state inmate who is proceeding without the assistance of counsel, brings this civil rights action under 42 U.S.C. § 1983 against Gary Mohr, Director of the Ohio Department of Rehabilitation and Correction, and Cynthia Mausser, Chair of the Ohio Adult Parole Authority ("APA"), in their official capacities.  Plaintiff contends that the APA's decision to rescind its 1998 Parole Board Guidelines Manual ("1998 Guidelines") has wrongfully extended his sentence in violation of the due process, equal protection, and the *ex post facto* clauses of the United States Constitution.  This matter is before the Court for the initial screen of Plaintiff's Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  Having performed the initial screen, for the reasons that follow, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Complaint in its entirety.

This matter is also before the Court for consideration of Plaintiff's Motion to Appoint Counsel. (ECF No. 2.) With respect to the appointment of counsel in civil cases, the Court has the statutory authority to make such an appointment under 28 U.S.C. § 1915(e). The exercise of that authority, however, is limited to truly extraordinary situations. *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993). The Court has evaluated the factors used to assess whether such circumstances exist in this case, and has determined that the appointment of counsel is not warranted. Plaintiff's Motion is therefore **DENIED**.

## I.

On January 7, 1992, Plaintiff pleaded guilty to voluntary manslaughter.[1] He was sentenced to an indeterminate term with a minimum of ten years, a maximum of twenty-five years, and a three-year mandatory sentence for possession of a firearm. He is currently serving this sentence. Plaintiff became eligible for parole in May 2001. (Ohio Parole Bd. Dec. 20, ECF No. 1-1.)

The APA denied Plaintiff's parole six times from July 25, 2001, to April 9, 2012. The Ohio Parole Board (the "Board"), a division of the APA, held Plaintiff's first parole hearing on July 25, 2001. The Exhibits Plaintiff attached to his Complaint reveal that the Board denied his parole at this first hearing due to the violent nature of the crime to which he pleaded guilty, his commission of five significant disciplinary infractions, and the fact that he was found guilty of felony fraud while incarcerated. (*Id.* at 51.) The Board held Plaintiff's second parole hearing on October 1, 2005. (*Id*. at 62.) The Board denied his parole, again citing his federal conviction for

---

[1] The Court takes judicial notice, pursuant to Rule 201(c) of the Federal Rules of Evidence, of the proceedings in Plaintiff's criminal case in Summit County, Ohio. The Court's proceedings, which are a matter of public record, satisfy Rule 201(b)'s criteria for the Court to take judicial notice. Fed. R. Evid 201; *see also Landt v. Farley,* 2012 WL 4473209, at *1 (N.D. Ohio Sept. 26, 2012) (noting that the "court may take judicial notice of matters of public record, including duly recorded documents, and court records available to the public through the PACER system and via the internet.") (quotation marks and citation omitted).

fraud and nine significant disciplinary infractions while incarcerated, and recommended that the next hearing be continued until June 2011. (*Id.*) The Parole Board Chairperson, however, did not accept the Board's recommendation and ordered a December 2005 Rehearing. (ODRC Letter 37, ECF No. 1-1.) The Exhibits attached to Plaintiff's Complaint do not include the results of the Rehearing, but show that the Board held Plaintiff's third parole hearing on March 21, 2006. The Board again denied Plaintiff's parole, citing to a positive urine test and six significant disciplinary infractions, one which involved felonious conduct. (Ohio Parole Bd. Dec. 56, ECF No. 1-1.) The Board held Plaintiff's fourth parole hearing on May 18, 2006. The Board again denied Plaintiff's parole, referring to the factors addressed at the March 21, 2006 hearing and stating the following:

> Inmate has not made a positive adjustment to the institution and has completed no programming. The panel has determined that a release at this time would not be in the best interest of justice and is not consistent with the welfare of society.

(*Id.* at 59). The Board held Plaintiff's fifth parole hearing on June 30, 2009. It again denied Plaintiff's parole, noting that although he had only had one conduct report since his last hearing, there was substantial reason to believe that "the inmate will engage in further criminal conduct, or that the inmate will not conform to the conditions of release." (*Id.* at 65.) The Board held Plaintiff's sixth parole hearing on April 9, 2012. In denying his parole, the Board noted that Plaintiff "did not take responsibility for his crimes and displayed little evidence that his criminal thinking has changed." (Ohio Parole Bd. Dec. 20, ECF No. 1-1.) The Board also noted his continuing criminal behavior while in prison and the violent nature of the crime to which he pleaded guilty. (*Id.*) By majority, the Board voted to continue his next parole hearing until April 1, 2015.

Plaintiff filed the instant action on September 30, 2013. He asserts that the APA's decision to stop using its 1998 Guidelines and its repeated denials of his parole violate his rights under the equal protection, due process, and the *ex post facto* clauses of the United States Constitution. Plaintiff contends that APA is exercising its discretionary authority in an arbitrary and capricious manner, which has resulted in an extension of his minimum sentence and a deprivation of "good time days." (Compl. 6 ¶¶ 9-10 and 8 ¶ 14, ECF No. 1.) Plaintiff asserts that, by rescinding its use of the 1998 Guidelines, the APA has circumvented the rulings in *Layne v. Ohio Adult Parole Authority*, 97 Ohio St. 3d 456 (Ohio 2002), and *Ankrom v. Hageman*, No. 04AP-984, 2005 WL 737833 (Ohio Ct. App. Mar. 31, 2005). Plaintiff also asserts that Defendants have violated Ohio Revised Code § 2967.19's requirement that a prisoner be released after serving the minimum term of a sentence. Finally, Plaintiff maintains that the APA is improperly refusing to parole prisoners sentenced under Ohio's indeterminate sentencing law in order to maintain its status as an agency.

## II.

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[2] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--

---

[2] Formerly 28 U.S.C. § 1915(d).

4

>     *     *     *
>
> (B) the action or appeal--
>
>    (i) is frivolous or malicious;
>
>    (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the

5

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

### III.

As a threshold matter, although Plaintiff styles this case as a civil rights action under 42 U.S.C. § 1983, to the extent he is challenging the fact or duration of his confinement, his sole remedy in federal court is habeas corpus. *See Skinner v. Switzer*, 131 S.Ct. 1289, 1293 (2011) ("Habeas is the exclusive remedy . . . for the prisoner who seeks immediate or speedier release from confinement." (internal quotation marks and citation omitted)). The Court now considers whether Plaintiff has sufficiently pled claims under the equal protection, due process, and *ex post facto* clauses of the United States Constitution.

**A. Equal Protection Claim**

To the extent Plaintiff seeks to assert an equal protection violation under § 1983, the Undersigned concludes that he has failed to sufficiently allege such a claim. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a claim for equal protection, a § 1983 plaintiff "must allege that a state actor intentionally discriminated against the plaintiff because of his membership in a protected class." *Carnes v. Engler*, 76 F. App'x 79, 81 (6th Cir. 2003). Plaintiff does not plead that he is a member of a

suspect or protected class.  The Court applies a rational basis review standard to equal protection challenges that do not involve a suspect class or a fundamental right.  *See Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005) (affirming the district court's application of rational basis review to a prisoner's equal protection claim under § 1983 because "prisoners are not considered a suspect class for purposes of equal protection litigation" and "there is no fundamental right to parole under the federal constitution.").  "Under rational basis scrutiny, government action amounts to a constitutional violation only if it is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude the government's actions were irrational."  *Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007).  Under rational basis review, the plaintiff bears the burden of demonstrating that the government lacks a rational basis for its actions.  *Id.*  The state "bears no burden of proof; its legislative choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data." *Id.* (internal citations and quotations omitted).  "A § 1983 plaintiff's challenge to the lack of a rational basis for an equal protection claim cannot succeed 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Carnes*, 76 F. App'x at 81 (citing *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 313 (1993)).

Here, Plaintiff has failed to plead a plausible equal protection claim arising from the rescission of the 1998 Guidelines.  The entirety of Plaintiff's allegations relating to his purported equal protection claim are as follows:

> Defendant[s] denied Plaintiff equal protection of the law, by committing fraud; obstructing process/justice during Plaintiff['s] parole hearings, by knowingly using an alter[nate] guideline taking Plaintiff beyond his minimum trial court sentence by not yielding to the statutory law under the Ohio [R]evised Code § 2969.13(A) and 2967.19(A).

7

(Compl. 6 ¶ 10, ECF No. 1.)  The APA explained that it rescinded the 1998 Guidelines because the "use of the [Guidelines was] no longer practical or effective" given the "dramatic transformation of Ohio's parole eligible population" since the passage of Ohio's 1996 sentencing laws.  *Ohio Dept. of Rehabilitation and Correction, Parole Board Guidelines* (April 1, 2010).  The Court cannot reasonably infer from Plaintiff's allegations that the APA's actions are irrational, especially in light of its proffered explanation.  Nor can the Court reasonably infer that its actions were motivated by animus or ill will.  Put another way, Plaintiff's bare assertions that the APA has committed fraud and knowingly extended his prison sentence do not negate the APA's purported basis for its decision to rescind the 1998 Guidelines.  Because the Undersigned cannot reasonably infer that the APA's decision to rescind the 1998 Guidelines was arbitrary or motivated by ill-will toward Plaintiff, it is recommended Plaintiff's equal protection claim be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A.

**B.  Due Process Claim**

The Undersigned concludes that Plaintiff also fails to state a viable due process claim. An inmate has "no inherent or constitutional right to parole."  *Hall v. Sheldon*, No. 2:09-CV-495, 2010 WL 2572117, at *2 (S.D. Ohio June 21, 2010) (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979)) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence").  "Nor does such right arise from Ohio law." *Id.; see also State ex rel. Seikbert v. Wilkinson*, 69 Ohio St. 3d 489, 490 (1994) ("In other words, Ohio law gives a convicted person no legitimate claim of entitlement to parole prior to the expiration of a valid sentence of imprisonment").  Consistently, the Ohio Supreme Court has concluded that prisoners do not have a liberty interest in the APA's use of parole guidelines.  *State ex rel. Hattie v. Goldhardt*, 69 Ohio St. 3d 123, 125 (1994).

"Under R.C. 2967.03, the parole decision is discretionary.  The APA's use of internal guidelines does not alter the decision's discretionary nature. Because neither statute nor regulation created the guidelines, and the board need not follow them, they place no substantive limits on official discretion." *Id.*  "Due process in parole proceedings is satisfied as long as the procedure used affords the inmate an opportunity to be heard, and, if parole is denied, the parole board informs the inmate of the basis upon which it denied parole." *Swihart v. Wilkinson*, 209 Fed. App'x 456, 458 (6th Cir. 2006).

Here, Plaintiff has failed to plead sufficient facts from which the Court may infer that he was deprived of an opportunity to be heard.  Moreover, the Exhibits Plaintiff attached to his Complaint demonstrate that the APA did, in fact, afford Plaintiff the opportunity to be heard at six parole hearings.  The documentation from these hearings reflects that the APA informed Plaintiff of the bases upon which it made the decision to deny his parole.  As set forth above, those reasons included the violent nature of Plaintiff's crime and also his numerous behavioral issues while in prison.  Thus, the Undersigned concludes that Plaintiff has not pled sufficient factual matter to state a plausible due process claim.

Plaintiff's reliance on *Layne* and *Ankrom* rulings is misplaced.  In *Layne*, the Ohio Supreme Court held that the APA was denying inmates meaningful consideration for parole by improperly assigning offense category scores that did not correspond to the offense of conviction.  97 Ohio St. 3d at 464.  *Layne* does not apply here because Plaintiff was assigned an offense category score that corresponded with his offense of conviction.  (*See* Sept. 9, 2003 ODRC Letter 24, ECF No. 1-1) (informing Plaintiff that his offense category score had been applied properly).  *Ankrom* involved a class of inmates (which included Plaintiff) serving indeterminate sentences following guilty pleas.  The inmates brought suit challenging the APA's

9

use of the 1998 Guidelines. The Ohio Tenth District Court of Appeals upheld the trial court's ruling that the APA denied the inmates meaningful consideration for parole by using the 1998 Guidelines to extend the time in which inmates became eligible for parole *beyond* the expiration of their minimum sentences. *Ankrom*, 2005 WL 737833 at *7. Here, the APA conducted Plaintiff's first parole hearing *prior to* the expiration of his minimum term. Thus, the concerns raised in *Ankrom* do not apply here.

Plaintiff's contention that the APA rescinded the 1998 Guidelines in order to circumvent the *Layne* and *Ankrom* rulings in violation of his due process rights is equally unavailing. The *Layne* Court specifically recognized that "the APA, when considering an inmate for parole, still retains discretion to consider any circumstances relating to the offense or offenses of conviction, including crimes that did not result in conviction, as well as any other factors the APA deems relevant." *Layne*, 97 Ohio St. 3d at 464. Additionally, the Ohio Supreme Court has held the "APA's use of internal guidelines does not alter the [parole] decision's discretionary nature." *Goldhardt*, 69 Ohio St. 3d 123, 125 (1994). Thus, the APA's decision to rely only on the Ohio Revised Code and the Ohio Administrative Code in making its parole decisions cannot support a viable due process claim.

Finally, Plaintiff's reliance upon Ohio Revised Code § 2967.19[13] is also misplaced. Plaintiff's assertion that O.R.C. § 2967.19 entitles him to release from confinement "once the statutory valid minimum sentence is served" fails for two reasons. (Compl. 11 ¶ 1, ECF No. 1.) First, O.R.C § 2967.19 provides that the director of the department of rehabilitation and correction *may* recommend that the sentencing court consider releasing an eligible inmate from prison. Ohio Rev. Code § 2967.19(b). Nothing in the law mandates release of an eligible offender from prison. Second, the law

---

[3] Plaintiff also identifies Ohio Revised Code §§ 2967.13 and 2967.25 as laws which entitle him to relief. The former is inapposite and the latter has been repealed.

10

only applies to offenders who are considered eligible, which is defined as those who are not serving a disqualified prison term. The law defines a disqualifying prison term to include a "prison term imposed for . . . voluntary manslaughter." Ohio Rev. Code § 2967.19(A)(2)(a). Given that Plaintiff is currently serving his term for pleading guilty to voluntary manslaughter, O.R.C. § 2967.19 does not apply. The Undersigned therefore concludes that Plaintiff's due process claim should be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A.

**C.  *Ex Post Facto* Claim**

Plaintiff has failed to plead facts sufficient to state a claim for an *ex post facto* violation. "[A]n *ex post facto* violation can be established in one of two ways: (1) if [a plaintiff] can show that the challenged provision, on its face, shows a significant risk of increased incarceration; or (2) 'by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule.'" *Hall*, 2010 WL 2572117 at *2 (quoting *Garner v. Jones,* 529 U.S. 244, 255 (2000)). "The Supreme Court has held that an *ex post facto* violation may be established with regard to parole regulations where the prisoner demonstrates a significant risk of increased punishment for his crime beyond that prescribed when he committed it." *Swihart*, 209 F. App'x at 459 (citing *Garner,* 529 U.S. at 251). Here, even accepting Plaintiff's allegations as true, he fails to state a plausible claim for an *ex post facto* violation. Plaintiff has pled no facts from which the Court could reasonably infer that the APA's action in rescinding the 1998 Guidelines caused a significant risk of increased punishment for his crime beyond the sentence the trial court prescribed. In support of his argument, Plaintiff states that under the law "in place at the time Plaintiff was sentence [sic] Plaintiff had an expectation for parole consideration which has been denied due to the Parole Board [sic] arbitrary and capricious discretionary

authority." (Compl. 6 ¶ 9, ECF No. 1.)  Additionally, Plaintiff has pled no facts to indicate how the practical application of the APA's post-2010 procedures will result in a longer period of incarceration.  Instead, he notes in a conclusory manner that APA's post-2010 policy "took him beyond his minimum trial Court sentence." (Compl. 5 ¶ 7, ECF No. 1.)  These facts are insufficient to state a claim for an *ex post facto* violation.  The Undersigned therefore concludes that Plaintiff's *ex post facto* claim should be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## IV.

For the reasons set forth above, Plaintiff's Motion to Appoint Counsel is **DENIED**. (ECF No. 2.)  Further, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Complaint in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  The Clerk is **DIRECTED** to send a copy of this order to the Ohio Attorney General's Office, 150 E. Gay St., 16th Floor, Columbus, Ohio 43215.

## PROCEDURE ON OBJECTIONS

If Plaintiff seeks review by the District Judge of this Report and Recommendation, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

Plaintiff is specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex*

12

*Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date: November 26, 2013                                          /s/ *Elizabeth A. Preston Deavers*
                                                                              Elizabeth A. Preston Deavers
                                                                              United States Magistrate Judge